James I. Harkins, Albert E. Cronin, Jr., Stockton, Cal., for appellant.

Kenaz Huffman, Denver, Colo., A. M. Mull, Jr., F. R. Pierce, Sacramento, Cal., for appellee.

Before BONE, ORR and POPE, Circuit Judges.

## JONES v. BARTELDES SEED CO.
### No. 12735.

United States Court of Appeals, Ninth Circuit.

Oct. 17, 1951.

Rehearing Denied Nov. 28, 1951.

ORR, Circuit Judge.

Appellant, a grower and seller of vegetable seeds, with his principal place of business located in Stockton, California, sent to his customers a "surplus list" showing the seeds he had in stock and the prices asked. Attached to the "surplus list" was a blank form of contract of sale. One of the provisions contained in said blank form was the following:

"5. Except as herein otherwise expressly provided, the seller gives no undertaking or warranty, express or implied, as to description, quality, productiveness, or any other matter of any seeds sold by it and will not be in any way responsible for the crop."

Appellee, a firm located in Denver, Colorado, and engaged in the sale of seed, received the said "surplus list" through the mails. Among the seeds listed were "Yellow Globe Danvers" onion seed at a price of $3.00 per pound. Upon receipt of the list appellee's manager contacted appellant by long distance telephone and made him an offer to purchase a ton of "Yellow Globe Danvers" onion seed, as well as several other items. After some negotiations, appellant agreed to sell the onion seed at a price of $2.50 per pound. The manner

of shipment and the terms of payment were also agreed upon.

Appellee's manager testified that during the course of the conversation "I told him [appellant] at the time that we only wanted first class quality stocks of high germination and true to type, and he assured me that the stocks were of first class quality and of high germination."

Appellee confirmed the purchase the following day by letter which stated *inter alia:* "We understand that these stocks are all choice quality stocks true to type."

Upon delivery of the onion seed appellee resold 1000 pounds of it as "Yellow Globe Danvers" to Dutch Valley Growers, Inc., an onion set cooperative growers' marketing association. The cooperative's members planted and cultivated the seed and discovered upon maturity of the crop that the onions did not have the characteristics of "Yellow Globe Danvers."

Subsequently, the cooperative recovered a judgment against appellee for damages for breach of warranty in a suit brought in the United States District Court for the District of Colorado. Appellee notified and requested appellant to appear and defend that suit but appellant failed to do so and similarly failed to pay the judgment recovered against appellee therein. Appellee brought this suit for damages for breach of warranty of description and obtained a judgment for the amount previously paid in satisfaction of the judgment rendered against it in favor of the cooperative, as well as attorneys' fees incurred in defending that suit. The basis of the trial Court's findings is that appellant made an express warranty of description in the course of the telephone conversation. The correctness of that finding is the important issue presented on this appeal.

In criticism of the said finding appellant urges that the express disclaimer provision of the contract form attached to the "surplus list" was part and parcel of the contract of sale and therefore prevented a warranty from arising. The simple answer is that the contract form was not used. It was merely a proffered convenience for the use of a purchaser in the event a contract embodying terms contained in the blank form was negotiated. Here the "surplus list" was used by appellee only as a price list and, finding the quoted price unacceptable, appellee made a telephone call which resulted in an agreement as to a purchase price, different from that quoted in the "surplus list", as well as an agreement as to the manner of shipment and terms of payment. The "surplus list", therefore, was not within the area of negotiation covered by the telephone conversation. Furthermore, the provisions contained in the contract form do not cover the type of sale involved here. The terms contained in the contract form are primarily concerned with a sale of seeds to be grown pursuant to the purchaser's order and not in existence at the time an order is solicited. Under the circumstances prevailing in this case it cannot be said that the purchaser of the seed should have known that the terms of the contract form were *sub silentio* a part of the contract it was entering into over the telephone. Cf. Restatement, Contracts § 70. In any event, a holding that the provisions contained in the form of contract accompanying the "surplus list" are part of a contract, would be of little comfort to appellant. It could operate in the instant case only to the extent of preventing the arising of the statutory implied warranty of description which would normally be created. 1 U.L.A. § 14. The disclaimer of warranty, contained in the submitted but unexecuted form, by its terms provided for exceptions to be made and the express warranty given by the appellant in the telephone conversation clearly constituted such an exception.

Appellant further urges that the telephone conversation must be interpreted in the light of a custom prevailing in the seed business not to warrant description or variety of the seed. The trial Court found that no such custom was in existence at the time the parties contracted. We are unable to say that this finding is clearly erroneous.

Disagreement existed between counsel for appellant and appellee as to whether the law of California or that of Colorado should be applied in construing the contract. We think it immaterial because both California

and Colorado have adopted the Uniform Sales Act, which, in our opinion, governs the transaction in issue here.

The Uniform Sales Act defines an express warranty as "any affirmation of fact or any promise by the seller relating to the goods * * *," and further provides that "no * * * statement purporting to be a statement of the seller's opinion only shall be construed as a warranty." 1 U.L.A. § 12.

The telephone conversation must be understood in the practical realities of the seed business. It is impossible to ascertain from an inspection of an onion seed the variety to which it belongs, since one onion seed is indistinguishable from another in appearance. However, the grower of onion seed by careful segregation at the time of harvest can successfully maintain that segregation, for all practical purposes, by the exercise of ordinary care. Appellant's description of the manner in which he handled and stored seed points up this conclusion. He testified that different varieties of seed were placed in separate sacks, appropriately labeled, and but one variety placed in the warehouse at any one time. In view of this practice, it is difficult to follow appellant's argument to the effect that because of the great similarity in appearance of onion seed a warranty as to type could not be given. Present the exercise of due care in the harvesting, sacking, labeling and storing, identification at any future time should not be difficult. We profess no particular competence in the field of onion seed cultivation and sale, but do think that the plain facts presented need no expert interpretation. It is a rational conclusion to say that appellee, a dealer in seed, would have knowledge of the grower's ability to segregate and distinguish, and to require a warranty as to the variety of seeds he was ordering. Appellee's understanding of the contract is evidenced in the confirming letter written one day after the order was placed. Out of an abundance of caution, in order to prevent misunderstanding, there was reiterated in the letter the same phrase previously used in the telephone conversation, viz.: "We understand that these stocks are all choice-quality stocks true to type."

Judgment affirmed.